351 So.2d 210 (1977)
Shirley DILLMAN
v.
John S. NOBLES and ABC Insurance Company.
No. 8385.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
*212 Calvin J. Hotard, New Orleans, Robert A. Pitre, Jr., Gretna, for defendant-appellant.
Wayne M. LeBlanc, Metairie, for plaintiff-appellee.
Before SAMUEL, LEMMON and BEER, JJ.
BEER, Judge.
On the evening of February 27, 1975, plaintiff-appellee, Shirley Dillman, in company with Darlene C. Musso and Beverly Alexander, attended the Scorpio Lounge in Marrero where they danced and had some drinks over a period of about two and onehalf hours. When Dillman returned from the dance floor to her table and sat down in the chair she had previously occupied, the right rear leg allegedly broke, causing her to fall to the floor. She sustained a fracture of her coccyx. Her description of the incident is confirmed by Musso and Alexander, who also confirm Dillman's testimony that a waitress named "Mary" came to her assistance, picked up the broken chair leg and waved it in the air while beckoning to "Johnny" (John S. Nobles), who did not respond.
John S. Nobles is president of Country Shindig, Inc., owner of the Scorpio Lounge. The lounge was sold by him to Country Shindig, Inc. in 1970. He manages the Scorpio, acknowledges that it is his sole source of livelihood, but denies liability for Dillman's alleged damages on the ground that if anyone is liable, it is the corporation. He also denies that the chair broke, contending that Dillman had been drinking and slipped from the chair as she attempted to sit down. He denies that any waitress waved a broken chair leg or that he was informed of the leg breaking incident.
The trial judge found that the chair did, in fact, collapse, causing Dillman's injuries. He further concludes:
"The Court is of the opinion that the lounge operator owed a duty of reasonable care to the plaintiff to provide a safe place to sit. Further the Court finds that though the chairs and tables may have been leased from Nunzio Provenzano they were within the exclusive possession and control of the defendant. There was testimony that the defendant inspected the chairs every week but the Court does not find this testimony credible and finds that the chairs were in fact never inspected at all. Since there is no direct evidence indicating negligence on the part of the defendant this Court feels that the doctrine of res ipsa loquitur is applicable. A plausible conclusion fairly drawn from the facts is that this accident would not ordinarily happen in the absence of negligence. The inference drawn from the failure to explain the accident's cause, together with the facts and circumstances of this case, is that the defendant did not exercise proper care. See Pear v. Labiche's, Inc., La., 301 So.2d 336.
The defendant argues that even if there is negligence he is not personally liable because the Scorpio Lounge is owned and operated by the `Country Shinding, Inc.' There is evidence that a corporate entity known as the `Country Shinding, Inc.' was incorporated on January 19, 1970. However, the Court is of the opinion that the defendant is personally liable.
The Court finds that no regular board of director meetings were held, nor minutes thereof kept; no corporation records were kept; there were no by-laws; nor was there a separate bank account for the corporation. Further, there was a constant commingling of personal and corporate funds; the lease of the lounge was in the name of John S. Nobles, individually, and the business permits or licenses were in both John S. Noble's *213 name, individually, and that of the corporation. From the foregoing facts the Court finds that the corporation is merely the alter ego of John S. Nobles and concludes that the defendant, John S. Nobles is individually and personally liable for injuries suffered by plaintiff as a result of the above described fall." (Reasons for Judgment, pp. 126-127.)
As a result of the fractured coccyx, Dillman was unable to walk without assistance for several days, and unable to do housework for several months. She experienced "exquisite localized tenderness of the tip of the coccyx," and required pain-relieving medication over a several month period. The trial court awarded damages in the amount of $3,500.
Nobles appealed, alleging errors of fact and law. Dillman answered the appeal, praying that the amount of the award be increased.
Nobles contends that absent a showing that the purpose or effect of incorporation was to perpetrate fraud, the "alter ego" or "piercing the corporate veil" doctrine cannot be applied, and that no fraud is alleged or shown in this case.
As a general rule, corporations are distinct legal entities, and their shareholders are not liable for debts of the corporation. But, to quote our brothers of the First Circuit:
"There are, however, limited exceptions to the rule of non-liability of shareholders for the debts of a corporation whereby the court may ignore the corporate fiction and hold the individual member or members liable. In such situations courts commonly refer to the corporation as the `alter ego' of the shareholder. One such exception to the non-liability rule involves situations where fraud or deceit has been practiced on a third party by the shareholder acting through the corporation. La.R.S. 12:95; Bossier Millwork & Supply Company v. D. & R. Construction Company, Inc., [La.App., 245 So.2d 414] supra.

Another basis for disregarding the corporate entity involves the failure to conduct a business on corporate footing, thereby disregarding the corporate entity to such an extent that the corporation ceases to be distinguishable from its shareholders. Gordon v. Baton Rouge Stores Company, 168 La. 248, 121 So. 759 (1929); Brown v. Benton Creosoting Company, 147 So.2d 89 (La.App. 2d Cir. 1962). In Louisiana, courts usually base this rule upon the often-quoted language of Keller v. Hass, [202 La. 486, 12 So.2d 238] supra:

`It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility. (Citations omitted)' 12 So.2d at 240."

Kingsman Enterprises v. Bakerfield Electric Co., 339 So.2d 1280,1282 (La.App. 1st Cir. 1976) (emphasis added) (footnote omitted).
The particular exception which permits application of the alter ego doctrine where corporate formalities have been disregarded is separate and distinct from that which permits its application to avoid fraud. Accord, H. Henn, Law of Corporations Section 147 (2d ed. 1970). Factors considered "may include, but are not limited to: commingling of corporate and shareholder funds; failure to follow statutory formalities for incorporation and the transaction of corporate affairs; undercapitalization; failure to provide separate bank accounts and bookkeeping records; and failure to hold regular shareholder or director's meetings." Kingsman Enterprises v. Bakerfield Elec. Co., supra.
Defendant disputes the trial judge's factual findings regarding lack of minutes, board meetings, corporate records, commingling of funds and use of Nobles' name on licenses. However, our review of the record results in noting the following relevant testimony:
1. Nobles claims that 290 board meetings had been held. However, on cross-examination, he did not even know who the *214 members of the board were. The meetings he had referred to turned out to be weekly meetings between Nobles and the lounge employees. (Tr. 49.)
2. Country Shindig, Inc. had no checking or savings account, but was run primarily on a cash basis, all cash allegedly passing through the cash register controlled by Nobles. In response to a subpoena duces tecum demanding checks dealing with Country Shindig, Inc., Nobles produced his personal checks. (Tr. 39, 40.)
3. The bookkeeper, Russel Gomez, testified that Nobles turned over to him copies of invoices and sales receipts. It was on the basis of this information alone that records were checked. Gomez indicated he had no means of verifying the amount the Scorpio actually took in, and relied on Nobles' representations.
4. Nobles took about $200 per week out of the register, this transaction being "recorded" by entering a sales slip in the register. This weekly draw was Nobles' sole livelihood. (Tr. 66.)
5. Many of the liquor and health licenses, and the lease, were in Nobles' name individually.
We agree fully with the trial judge's determinations. No board meetings took place; Nobles did not even know who was on the board. A cash system of bookkeeping alone is not necessarily suspect; however, Nobles' complete control over the removal of the cash constituted such a loose financial arrangement that nothing whatever prevented Nobles from transferring any or all of the cash out of the corporation. The alter ego doctrine is designed to meet such inequities, and "(t)he shareholder who refuses to draw a line between his individual and corporate affairs is in a poor position to ask that the court effect what he failed to do." Henn, supra.
Error in the trial court's application of the doctrine of res ipsa loquitur is also alleged. Citing King v. King, 253 La. 270, 217 So.2d 395 (1968), Nobles urges that "(r)es ipsa loquitur is irrelevant when the body of proof consists of direct evidence adequately explaining the occurrence and establishing the details of the negligence charged."
In Gonzales v. Winn-Dixie Louisiana, 326 So.2d 486 (La.1976) and Kavlich v. Kramer, 315 So.2d 282 (La.1974), the Louisiana Supreme Court described the order of proof required in cases such as this: when plaintiff has established that the cause of the accident was some allegedly negligent act of defendant, "(t)he burden then shifts to the defendant to go forward with the evidence to exculpate itself from the presumption that it was negligent."
The Kavlich-Gonzales rule seems as applicable to a procedure for the maintenance of chairs as to the maintenance of floors when applied to one in whose sole control those chairs are maintained.
Appellant further contends that since Dillman (as an "unescorted lady") received free drinks on the night in question, she was not an invitee but merely a gratuitous guest to whom no more than ordinary care was due.
It is a ready inference that the lounge owner's giving free drinks to unescorted ladies was motivated as much by business reasons as by a munificent spirit toward unescorted females. We view the arrangement as one for mutual benefit. Such was held to be the basis of invitee status in Brown v. State Farm Fire & Casualty Company, 252 So.2d 909 (La.App. 2nd Cir. 1971).
Towards an invitee ". . . the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger. (Citations omitted.) The owner, occupant, or person in charge of property [owes to] an invitee * * * the duty of exercising reasonable or ordinary care for his safety and is liable for injury resulting from breach of such duty. This duty includes that of exercising reasonable care to keep the premises in a reasonably safe and suitable *215 condition or of warning invitees * * of hidden or concealed perils of which he knows or should know in the exercise of reasonable care, so that those whom he has invited to enter upon or use his property shall not be unnecessarily or unreasonably exposed to danger." Id., at 911. Accord, Rachal v. Brookshire Grocery Stores, Inc., 336 So.2d 1014 (La.App. 3rd Cir. 1976), writ refused 339 So.2d 358; Brown v. Southern Ventures Corp., 331 So.2d 207 (La.App. 3rd Cir. 1976), writ refused 334 So.2d 211; Miller v. Broadmoor Village, Inc., 321 So.2d 925 (La.App. 1st Cir. 1975), writ refused, 325 So.2d 276.
The trial judge found that Nobles did not inspect the chairs weekly, as his uncontradicted testimony indicated. Thus, the court made a factual conclusion that he had breached the applicable standard of care.
On this issue, Nobles alleges error in the trial judge's disregard of his allegedly uncontroverted testimony. There is no merit in this contention. There are many instances where a trial judge's disregard of unrefuted testimony has been contested and upheld. See Succession of Terral, 312 So.2d 296 (La.1975).
Turning to Dillman's contention that there should be an increase in quantum, note is taken of the wide range of discretion of the trial judge in such determinations. We find no abuse. The judgment of the trial court is affirmed.
AFFIRMED.
LEMMON, J., concurs.