|! CARAWAY, J.,
concurring.
I agree with the majority’s excellent review of the facts and with all but one rationale regarding the return of properties to the fictitious estate. I respectfully concur in the ruling concerning A & C Music corporation and the “sales” of im-movables to Miss Adams prior to 1971 while she was supposedly a shareholder of the corporation. The facts belie the existence of a corporation. Therefore, the reason these transactions are subject to reduction is because they were disguised donations from Mr. Adams, not the corporation, to his sister.
Under corporation law, the so-called alter ego doctrine allows the corporate entity to be disregarded. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991). Discussing the alter ego doctrine in Riggins, the court said:
There are limited exceptions to the rule of non-liability of shareholders for the debts of a corporation, where the court may ignore the corporate fiction and hold the individual shareholders liable. Generally, that is done where the corporation is found to be simply the “alter ego” of the shareholder. It usually involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation. Another basis for piercing the corporate veil is when the shareholders disregard the requisite corporate formalities to the extent that the corporation ceases to be distinguishable from its shareholders.
Some of the factors courts consider when determining whether to apply the alter ego doctrine include, but are not limited to: 1) commingling of corporate *487 and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings.
Id at 1168; citations omitted throughout.
12In this case, Miss Adams knew when she became a “shareholder” that her brother and Mr. Costanza would continue to run their business as they pleased. She did not act as a substantial shareholder. She did not require her brother to maintain corporate records. She, Mr. Costanza and her brother never voted to distribute the earnings of the business in the form of cash dividends, pro rata on the basis of their shareholdings. The shareholders, through a board of directors, did not decide to have the “corporate” assets used (or misused) in payment for the property which was deeded to Miss Adams. She accepted what her brother, in his sole discretion, gave her out of his portion of the cash-operated business. In summary, the corporation -with its veil intended to be a sham from the start was no corporation.
The trial court effectively found that A & C Music was operated as Mr. Adams’ personal joint venture in making a ruling for the fictitious return of Mr. Adams’ June 7, 1965 “sale” of land to his other sister, Mrs. Talley. The deed listed an existing indebtedness against the property which the “vendee” was to assume. The trial court stated:
The next issue is the property which was sold by James Adams to Roberta Talley and which was paid for by A & C Music. Since Roberta Talley was never given an ownership interest in A & C Music, the issue of fruits does not arise. Therefore, the transfer by James Adams and the payment by A & C Music constitute a donation, and the property must be included in the fictitious estate.
This critical fact ruling demonstrates that the trial court recognized that Mr. Adams was directing his share of the funds and profits of A & C Music as he pleased. The court recognized that this was entirely Mr. Adams’ donation 13to Mrs. Talley and not A & C Music’s donation because the funds used to pay for the property were “corporate” monies of the alter ego of Mr. Adams.
Because Mr. Adams acted personally in these disputed transactions — A-2, A-3 and A-4, E-l through E-7, E-9, E-10, E-12 through E-17, and E-19 — under the guise of A & C Music, Miss Adams was not the vendee of these properties but the donee of Mr. Adams. Such disguised donations are addressed by the Civil Code’s definition for relative simulation which occurs “when the parties intend that their contract shall produce effects between them though different from those recited in their contract.” La. C.C. art. 2027; comment (a) to La. C.C. art. 2026.
Accordingly, I concur with the majority regarding the return of the properties on the basis that these transactions were the disguised donations of Mr. Adams to Miss Adams. I accept plaintiffs’ argument in their brief that “the ‘donation’ of the stock was not a true donation, and was not intended to transfer ownership” of Mr. Adams’ interest in the joint venture. This non-transfer of ownership to Miss Adams under such “corporate” arrangement was a worthless conveyance of a shareholding in the business. Miss Adams received no value from “shares” of A & C Music because that corporation never existed.