McDonald, j.
IsThis litigation arose as the result of an automobile accident in July 2007, in which a 2004 International Truck driven by Larry G. Savoie (Savoie) collided with a school bus driven by Beverly Kemp (Kemp). Kemp filed suit in June 2008 for injuries received in the accident, in which his wife, Mary Ann, joined with a loss of consortium claim. The issue in this appeal is the ranking of the three insurance policies that were undisputedly responsible for the insurance available to settle the claims of the plaintiffs. For the reasons that follow, we reverse and remand.
The 2004 International truck driven by Savoie was personally owned by Jason Holliday (Holliday). Holliday also owned Holliday Trucking, Inc. (Holliday Trucking), which he had established to get into the trucking and hauling business. At the time of the accident, Savoie was making a delivery for Segue Distribution, Inc. (Segue). Segue had a contract with Holliday Trucking for transportation services. Clarendon America Insurance Company *1068 (Clarendon) insured Holliday Trucking. Chubb Custom Insurance Company (Chubb) provided insurance to Segue from October 6, 2006 through October 6, 2007. Hartford Insurance Company (Hartford) provided insurance to Segue from May 18, 2007 through May 18,2008.
The underlying suit has been settled and there are no issues concerning the responsibility of each insurer for the settlement to Kemp. However, in the course of the litigation, Chubb provided a defense to Savoie and now seeks reimbursement from the other insurers for this cost. Each insurer had identical language in its policy concerning primary and excess coverage:
5. Other Insurance
For any covered “auto” you own, this Coverage Form provides primary insurance. For any covered “auto” you don’t own, the insurance provided by this Coverage Form is excess over any other collectible insurance....
|4d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.
On December 27, 2006, Segue entered into a Transportation Service Agreement (TSA) with Holliday, whereby Holliday was to perform transportation services. Referring to Segue Distribution, Inc. as the “Company” and Holliday as the “Contractor,” the TSA’s provisions were extensive. It provided that the Contractor would be an Independent Contractor, including for tax purposes, and that “the transportation services performed by the Contractor shall be performed entirely at Contractor’s risk.” The Contractor was responsible for obtaining all permits and licenses, and paying all applicable sales, use, federal, and state income taxes.
Section 4.08 provided, in part:
Contractor shall, at no expense to Company procure, maintain and provide to Company certificates of insurance throughout the Initial Term and successive terms the following insurance with effective dates of coverage being the date hereof:
Commercial Vehicle Liability Insurance covering all vehicles, whether owned, leased or hired, with a combined single limit of $300,000 per occurrence with no aggregate limitation.
Section 7.12 provided that the Contractor would indemnify and hold harmless the Company.
Pursuant to the TSA, Holliday obtained a commercial auto policy from Clarendon that provided a $1,000,000 limit for liability coverage and listed the 2004 International Truck as a covered auto with Larry Savoie as an approved driver. Savoie was employed and paid by Holliday; however, according to Savoie’s deposition testimony, his supervisor was Todd Achee, a Segue employee. Holliday Trucking, Inc., not Jason Holliday, was listed as the “insured” under the policy. As noted, the truck was owned by Holliday personally.
| ¡¡Hartford also issued an insurance policy that covered Segue with a $1,000,000 policy limit. All three insurers at issue, Hartford, Chubb, and Clarendon, were named as defendants in this matter based on the allegation that they each issued an insurance policy that provided coverage for the July 2007 accident and the damages sustained by the plaintiffs. All three policies contained identical “other insurance” provisions, and all policies provided $1,000,000 coverage. The “other insurance” provision is considered in ranking multiple policies to determine which insur *1069 er has the initial liability and which are excess.
The district court ruled that all three insurers provided coverage for the accident but that none provided primary coverage since none was providing coverage for a vehicle “owned” by the insured; thus, all provided excess coverage. Also, the district court found that no insurance company owed defense costs to another, which is a concomitant of the first ruling, because only a primary insurer could owe defense costs for an insured to an excess insurer that paid them. If all insurers provided excess coverage, the insurance companies would pay the damages in pro rata shares. The district court ruled that the three insurance companies each owed a third of the damages.
In February 2011, Chubb and its insured, Segue, filed for leave to file a cross-claim and third-party demand in the district court. These claims were dismissed in the court’s ruling of September 16, 2011, which was finalized in a judgment signed on October 14, 2011, and is the judgment before us for review.
Chubb and Segue appeal, assigning as error the district court’s failure to find that Clarendon’s policy applies on a primary basis and the district’s failure to find that Clarendon owed Segue for the defense costs that Chubb had paid. Chubb also raises as error by the district court the decision that the October 14, 2011 judgment was a final judgment. It maintains that unresolved issues exist concerning the | ^interpretation of the TSA, the status of the TSA as an “Insured Contract,” and Chubb’s entitlement to pursuit charges from Clarendon thereunder.
The court’s finding that the October 14, 2011 judgment was a final judgment (although it was not designated as such until July 2012, based on a motion by Clarendon), required that Chubb’s claims be dismissed. Chubb’s assertion that unresolved issues remain regarding the TSA, is de-pendant on a finding that Holliday and Holliday Trucking, Inc. are a single entity or that the TSA creates a single business entity.
Louisiana jurisprudence is replete with cases holding the corporate veil can only be pierced in extraordinary circumstances, generally involving fraud. Riggins v. Dixie Shoring, Co., Inc., 590 So.2d 1164, 1168— 69 (La.12/2/91), contains a detailed discussion by the supreme court of factors to be considered in “veil piercing” cases and cites numerous cases for each of the factors reviewed. The case establishes that if plaintiffs (creditors) do not allege shareholder fraud, they bear a heavy burden of proving that shareholders disregarded the corporate entity to such an extent that it became indistinguishable from themselves. Some of the factors courts consider when determining whether to apply this “alter ego doctrine” include, but are not limited to: commingling of corporate and shareholder funds; failure to follow statutory formalities for incorporating and transacting corporate affairs; undercapitalization; failure to provide separate bank accounts and bookkeeping records; and failure to hold regular shareholders meetings. The case also establishes that courts are reluctant to hold a director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing. When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative.
Holliday Trucking’s corporate charter was revoked by the Secretary of State in 2003. Holliday did maintain a business entity for some purposes after that date | y(to make certain payments), but we find that Holliday Trucking was not an entity separate from Holliday. Holliday Trucking did not maintain statutory formalities, and *1070 the charter was revoked for failure to file annual reports as required. After three consecutive years of failure to hold meetings, corporation law requires that the charter be revoked authority. There was commingling of Holliday’s personal funds and corporate funds. Although Holliday testified that an accountant reviewed and reported on transactions on the bank account of Holliday Trucking separate from Holiday’s personal account, the corporation was undercapitalized such that Holli-day personally was required to deposit his own funds into the corporate account to pay bills. Holliday also testified that the corporation neither held meetings, nor did it maintain minutes.
Recognizing the principles of Riggins, this court has held that the fact that one person owns all or a majority of the stock of a corporation does not in itself make that person liable for corporate debts. Terrebonne Concrete, LLC v. CEC Enterprises, LLC, 11-0072 (La.App. 1 Cir. 8/17/11), 76 So.3d 502, 508, writ denied, 11-2021 (La.11/18/11), 75 So.3d 464. The instant case, however, is not a typical “piercing the veil” case. The main purpose of a corporation is to prevent shareholders from being personally liable for corporate debts. This ability to establish an identity to engage in business without being personally liable for its debts is considered to be an excellent way to stimulate the economy.
In this case, Holliday is not being held personally liable for a debt. The district court determined that the insurance policy that he purchased to insure the truck involved in the accident provided coverage for one third (1/3) of the damages. When the parties entered into the TSA contract, it required Holliday to maintain insurance to protect the “Company,” Segue. When the TSA established the contract between Holliday/Holliday Trucking and Segue in December 2006, it |swas the intention of Holliday to provide transportation services to other clients. At the time of the accident, July, 2007, however, Segue was Holliday’s only client.
The revocation of the corporate charter by the Secretary of State resulted in the corporate entity ceasing to exist. It is our finding that the totality of circumstances dictate that Holliday and Holliday Trucking, Inc. are a single entity. Accordingly, the fact that Holliday was the owner of the truck, but the Clarendon insurance policy insured Holliday Trucking is of no significance and Clarendon is the primary insurer.
The district court’s finding that none of the insurers were primary insurers necessitated the dismissal of Chubb’s cross-claim and third-party demand. However, because we find that the Clarendon policy was primary, Chubb, having paid the costs of defense for Clarendon’s insured, had a right to file an action against Clarendon for recovery of those costs. We have determined that Holliday and Holliday Trucking, Inc. are a single entity. By Clarendon’s own argument, the Clarendon policy would be considered primary if Holliday Trucking owned the covered auto or if Holliday was a named insured such that the TSA is an insured contract. Since they are a single entity, it is a distinction without a difference.
Also, it is apparent from a reading of the TSA that one of its purposes was to provide Segue with protection against liability for any accidents Holliday/Holliday Trucking, Inc. was involved in when transporting Segue merchandise. The initial consideration in contract interpretation is to determine the intent of the parties. Where the language is clear and explicit “no further interpretation may be made in search of the parties’ intent.” La. C. C. Art.2 046. Thus, the initial consideration is the lan *1071 guage of the contract; only when it is not clear, is a search for the parties’ intent warranted. As noted, the TSA had multiple purposes, but it was clearly its intention to make Holliday the primary insurer for accidents.
|aThat portion of the judgment holding that all three policies are excess, is reversed, and the matter is remanded to the district court for a determination of the amounts for which each insurer is liable in defense costs.
Chubb also challenges the district court’s designation of the October 14, 2011 judgment as a final judgment and the dismissal of its cross-claim and third-party demand as being in error. It is Chubb’s contention that several other issues remain, including interpretation of the ISA and the rights thereunder. If Chubb feels it has claims that have not been put before the district court, its motion and memorandum should be submitted by a date designated by the district court. We are not persuaded by Clarendon’s arguments that if they have not already been presented to the court, Chubb’s claims have been lost. An appropriate time to assert its claims would have been after the ruling by the district court, as to which, if any, insurance policy is primary.
CONCLUSION
Based on the foregoing, we find that the policy numbered DSA019515 issued to Jason Holliday/Holliday Trucking, Inc. by Clarendon America Insurance Company provides primary coverage for the damages sued upon. The judgment of the district court that all insurers provided excess coverage and that none owed defense costs to any other is reversed. This matter is remanded to the district court for a determination of Chubb’s defense costs and for consideration of Chubb’s claims which are to be submitted to the district court by a date designated by that court. Costs of this appeal are assessed against Clarendon America Insurance Company.
REVERSED AND REMANDED.