STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT


DOCKET NUMBER
2023 CA 1183

INTELLIGENT MORTGAGE AND
CONSULTING SERVICES, LLC

VERSUS

ARBOR LENDING GROUP, L.L.C., PAUL LEBLANC,
KEVIN MORGAN, ANGELE MIXSON AND JELENA BRYANT


Judgment Rendered: OCT 2 9 2024


* * * * *


ON APPEAL FROM THE
NINETEENTH JUDICIAL DISTRICT COURT, DIVISION 21
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 689083

HONORABLE RONALD R. JOHNSON, JUDGE PRESIDING


* * * * *

Kyle M. Keegan
J. Brian Juban
Baton Rouge, Louisiana

Attorneys for Plaintiff-Appellant
Intelligent Mortgage and Consulting
Services, LLC


Kenneth C. Bordes
New Orleans, Louisiana

Attorneys for Defendant-Appellee
Angele Mixson

**BEFORE: McCLENDON, THERIOT, AND GREENE, JJ.**

McClendon, J. concurs

**GREENE, J.**

This is an appeal from a judgment in favor of the plaintiff, Angele Mixson, on claims asserted pursuant to the Louisiana Wage Payment Act (LWPA), La. R.S. 23:631, against her former employer, Intelligent Mortgage and Consulting Services, LLC (IMC) and its owner, Brandon Abidin. After review, the attorney fees award is vacated and we remand the matter for a hearing on attorney fees. In all other respects, the judgment is amended to provide that it is awarded against IMC only, and the judgment is affirmed as amended.

## FACTS AND PROCEDURAL HISTORY

IMC is a residential mortgage broker. Arbor Lending Group, LLC is a competing residential mortgage broker. Ms. Mixson was formerly employed with IMC as a loan originator and had an employment agreement with IMC.

Beginning around March 2019, while employed at IMC but secretly working for Arbor, Ms. Mixson and another loan originator allegedly began emailing themselves electronic data files accessed from IMC's computer system. IMC contended that Ms. Mixson and the other loan originator "stole" the loan files by attaching the electronic data files to emails sent from IMC's computer systems to the employees' personal and Arbor-provided email addresses. IMC terminated Ms. Mixson on April 29, 2019.

IMC filed a petition for damages on October 10, 2019, against Ms. Mixson and other defendants, alleging that the defendants used its stolen loan files to broker loans through Arbor for IMC's customers. IMC asserted claims of conversion, violations of Louisiana's Uniform Trade Secrets Act ("LUTSA"),[1] violations of Louisiana's Unfair Trade Practices and Consumer Protection Law ("LUTPA"),[2] tortious interference with business, breach of contract, fraud, negligence, and unjust enrichment.

Ms. Mixson filed a reconventional demand against IMC and Mr. Abidin personally, asserting the LWPA claims at issue in this appeal. These claims arose from a single loan (the Lewis loan) that closed at IMC shortly after Ms. Mixson's termination. Had Ms. Mixson remained at IMC at the time the loan closed, she would have received a commission of $1,542.56.

---

[1] See La. R.S. 51:1431, *et seq.*

[2] See La. R.S. 51:1401, *et seq.*

The case proceeded to trial on Ms. Mixson's wage claims on November 8, 2021, and afterward the trial court took the matter under advisement.[3] Thereafter, the trial court awarded Ms. Mixson $1,542.56 in unpaid wages, $32,860.80 in penalty wages, and $26,700.00 in attorney fees, for a total of $61,103.36, plus interest and costs. The judgment was signed on May 11, 2022. The award was issued against IMC and Mr. Abidin *in solido*. IMC and Mr. Abidin appealed the judgment.[4]

On appeal, IMC raises six assignments of error.

1. The [trial court] erred by finding IMC's employment agreement conflicts with the purpose of the LWPA or otherwise contravenes public policy.

2. The [trial court] erred by declaring IMC's employment agreement null and void in its entirety based on a California choice of law provision (that no party sought to enforce).

3. The [trial court] erred by finding that IMC's employment agreement operated as an impermissible fine under La. R.S. 23:635.

4. The [trial court] erred by awarding penalty wages.

5. The [trial court] erred by awarding [attorney] fees. Even if [attorney] fees were due, the [trial court's] award constituted an abuse of discretion because it did not resolve ambiguities in the amount and basis of the fees requested.

6. The [trial court] erred by finding [Mr.] Abidin personally liable under the LWPA.

## UNPAID WAGES

In assignments of error numbers one, two, and three, IMC maintains that the trial court erred in finding that Ms. Mixson was due unpaid wages of $1,542.56 as her employment contract with IMC allowed IMC to withhold wages due to unlawful activity. IMC maintains that Ms. Mixson's employment with IMC entitled her to commission payments in accordance with the pay scale set forth in her employment contract. It asserts that the employment contract provides that after termination, employees receive full or partial commission payments in amounts that are proportional to how close a loan

---

[3] The record does not provide the disposition of IMC's claims against Ms. Mixson. However, at the start of the trial, the parties agreed that the only matter before the court was Ms. Mixson's claim against IMC.

[4] In her brief, Ms. Mixson asked for an award of attorney fees for the defense of the appeal. She did not appeal or answer the appeal. We note that to be awarded attorney fees and costs for the work associated with answering and defending an appeal, an appellee must either file its own appeal or answer the appeal. See **Molinere v. Lapeyrouse,** 2016-0991 (La. App. 1 Cir. 2/17/17), 214 So.3d 887, 897-98.

was to closing at the time of separation, but that the agreement does not provide for these same payments for employees terminated for unlawful activity.

Louisiana Revised Statutes 23:631 provides in part:

A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

. . . . .

B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.

Louisiana Revised Statutes 23:634 provides in part:

A. No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

Ms. Mixson testified that she was owed her commission on the Lewis loan, and Mr. Abidin conceded that she had performed a substantial amount of work on the Lewis loan, for which she sought her earned wages. Mr. Abidin testified that the Lewis loan closed around a week after Ms. Mixson left IMC. Ms. Mixson put IMC on notice that the wages were due in an April 30, 2019 email to Mr. Abidin noting that she had been working on the Lewis loan for months, and that all that was left to be done was a "super simple" matter regarding the appraisal report which had to be done by a third-party company and should be completed in a few days.

In its defense against Ms. Mixson's wage claim, IMC maintained that Ms. Mixson stole information from IMC by forwarding it to Arbor, her new employer. However, Ms.

4

Mixson testified that when she began working at IMC she was encouraged to bring files with her from her former employer, Southwest, and that she did so in the same manner that she forwarded files to Arbor when she was leaving IMC. Mr. Abidin agreed that files were forwarded from Southwest, but maintained that was done with the permission of Southwest after being denied because Southwest was not licensed in Texas and IMC was. Notably, no police reports or criminal charges were ever filed against Ms. Mixson by IMC for her actions. Further, the employment agreement does not define "unlawful activity." The trial court found that Ms. Mixson's testimony was highly credible and rejected Mr. Abidin's testimony due to conflicts in his testimony.

The trial court determined that IMC failed to establish that it met an exception to the LWPA's wage payment provision. In awarding the full commission on the Lewis loan as unpaid wages, the trial court disregarded the portion of the employment contract providing for payment of a commission based on the status of the loan at the time of termination. The employment contract stated that a loan that was approved with conditions would result in a 50 percent commission. In awarding the full commission, the trial court presumably found that this provision was violative of La. R.S. 23:634(A), which provides that employees shall be entitled to the wages actually earned up to the time of their discharge or resignation. We find no manifest error or legal error in that determination.

## PENALTY WAGES

In assignment of error number four, IMC maintains that the trial court manifestly erred in finding IMC was not in good faith and in awarding penalty wages.[5]

Louisiana Revised Statutes 23:632 provides:

A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by

---

[5] IMC does not maintain that the penalty wages were incorrectly calculated.

5

the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Equitable defenses are available, and penalty wages are not to be absolutely imposed. A good faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability, permits the court to excuse the employer from the imposition of penalty wages. However, when an employer is arbitrary, sets out procedural pitfalls for the employee, or is merely negligent in failing to pay past due wages, penalty wages will be assessed. **Scarbrough v. Lynmar Holdings, LLC**, 2021-1566 (La. App. 1 Cir. 8/31/22), 349 So.3d 34, 37, writ denied, 2022-01474 (La 11/22/22), 350 So.3d 500. Reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages. **Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc.**, 707 So.2d 1233, 1237 (La. 1998)

Whether there exists a valid, equitable defense to a claim of penalty wages depends on the particular facts of each case. A trial court's determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review. **Scarbrough**, 349 So.3d at 38.

The trial court found that Ms. Mixson substantially completed the Lewis loan and made demand for payment of her commission and that IMC was in bad faith in withholding the payment. In so finding, the trial court presumably found that the employment contract which provided for the payment of a commission based on the status of the loan at the time of termination was violative of La. R.S. 23:634(A), which provides that employees shall be entitled to the wages actually earned up to the time of their discharge or resignation, and thus there was no good faith dispute. The trial court

6

determined that penalty wages of $32,860.80 were due. After review, we find no manifest error in that determination.

## ATTORNEY FEES

In assignment of error number five, IMC asserts that the trial court erred in awarding attorney fees, and that even if attorney fees were due, the trial court's award constituted an abuse of discretion because it did not resolve ambiguities in the amount and basis of the fees requested. During the trial, Ms. Mixson's attorney moved to introduce his attorney fee affidavit as his last exhibit. Counsel for IMC and Mr. Abidin stated that he understood that, if an award was made to Ms. Mixson, the attorney fee issue would be brought up post-hearing. The trial court stated "[w]ell as long as the rights to that issue [are] reserved, we can take it up later." No hearing was held; however, the trial court awarded $26,700.00 in attorney fees, relying upon the affidavit from Ms. Mixson's attorney.

Ms. Mixson maintains that the attorney fees award should be upheld as the attorney fees affidavit pertained "only to the time and costs spent on this wage claim between Ms. Mixson and IMC."[6] However, as the trial court failed to hold the hearing on attorney fees, we find that the trial court erred in awarding attorney fees. We thus vacate the attorney fees award and remand for a hearing on this issue.

## PERSONAL LIABILITY OF MR. ABIDIN

In assignment of error number six, IMC maintains that the trial court erred by finding Mr. Abidin personally liable, as Ms. Mixson's employer was IMC, not Mr. Abidin. IMC maintains that the issue of personal liability of Mr. Abidin was not raised by Ms. Mixson at trial, nor was evidence of personal liability presented. It asserts that the Rule 9.5(b) certificate[7] submitted by Ms. Mixson's counsel with the proposed judgment noted that Mr. Abidin objected to being named personally and that the certificate raised the veil

---

[6] We note that Ms. Mixson brought an LWPA claim against Arbor Lending Group, LLC that settled in principle the morning of trial.

[7] Rule 9.5(b) of the Rule for Louisiana District Courts provides in part:

> When submitted, the proposed judgment, order, or ruling shall be accompanied by a Rule 9.5(b) certificate stating: the date of mailing; the method of delivery of the document to other counsel of record and to self-represented parties; whether any opposition was received; and the nature of the opposition.

piercing/alter ego argument for the first time. In response, Ms. Mixson maintains that she proved that Mr. Abidin was the sole owner and decision maker for IMC, and that he benefitted from withholding her wages.

The record shows that Ms. Mixson was employed by IMC, not by Mr. Abidin. Because of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. Moreover, if the plaintiffs do not allege shareholder fraud, they bear a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves. **Riggins v. Dixie Shoring Co., Inc.**, 590 So.2d 1164, 1168 (La. 1991). There are limited exceptions to the rule of non-liability of shareholders for the debts of a corporation, where the court may ignore the corporate fiction and hold the individual shareholders liable. Generally, that is done where the corporation is found to be simply the "alter ego" of the shareholder. It usually involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation. Another basis for piercing the corporate veil is when the shareholders disregard the requisite corporate formalities to the extent that the corporation ceases to be distinguishable from its shareholders. **Riggins**, 590 So.2d at 1168.

Some of the factors courts consider when determining whether to apply the alter ego doctrine include, but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings. **Riggins**, 590 So.2d at 1168.

Ms. Mixson did not present evidence at trial to show that the corporate entity of IMC ceased to become distinguishable from Mr. Abidin. See **Riggins**, 590 So.2d at 1168. Thus, the trial court erred in finding Mr. Abidin personally liable, and we amend the judgment to provide that it is only against IMC.

### CONCLUSION

The attorney fees award is vacated and the matter is remanded for a hearing on attorney fees. In all other respects, the trial court judgment is amended to provide that

8

it is solely against IMC, and it is affirmed as amended. Costs of this appeal are assessed one-half against Intelligent Mortgage and Consulting Services, LLC and one-half against Angele Mixson.

## DECREE

**ATTORNEY FEES AWARD VACATED AND MATTER REMANDED FOR HEARING ON ATTORNEY FEES; IN ALL OTHER RESPECTS JUDGMENT IS AMENDED AND AFFIRMED AS AMENDED.**

9