MARVIN, Chief Judge.
In this action under the Private Works Act, LRS 9:4801 et seq., the landowners appeal a judgment against them which, in part, awarded three subcontractors amounts claimed for labor and material incorporated into the work undertaken by the landowners.
The landowners assert the judgment should be reversed because parol evidence was erroneously admitted to support the respective demands of two claimants, John Graham (d/b/a Graham’s Cabinet Shop) and Northeast Pest Control, Inc., and because the third claimant, Earnest Cole (d/b/a Home Improvement Center), did not prove he delivered materials to landowner’s worksite.
We amend to reduce the award to Cole and otherwise affirm the judgment.
FACTS
Defendants, who are husband and wife, will be referred to singularly as Joshua. Between October 1987 and April 1988 Joshua renovated three duplexes he owned in *861 Monroe which he partially funded with a community development loan obtained from the City of Monroe.
The city periodically disbursed funds directly to Joshua, who identified himself as the owner and general contractor in the written loan application and contractor’s bid he submitted to the city. After gaining loan approval, Joshua entered into a written contract with Billy Ray Dew on October 1,1987, in which Dew obligated himself to do the work and to furnish Joshua with “all materials, labor, equipment, licenses and permits” for $53,500, payable in three installments, the first of which was due when the work was “½ finished.”
Jacqueline Howell, the community development officer for the city, supervised the project. She testified that Joshua told her in early 1988 that he “would be running his own job ... [because] he felt like Mr. Dew was taking materials to other jobsites and [they were] being charged to him [Joshua].” Dew testified that Joshua “fired” him as contractor two or three times shortly after the work began.
Joshua admitted that he began advancing funds to Dew to pay for labor and materials about a week after October 1, 1987, notwithstanding the terms of their written contract and the absence of any written change order required by the contract. Joshua said he paid cash to some of the workers on his duplexes who had not been paid by Dew.
Joshua paid Dew in earlier, smaller, and more frequent installments than the contract called for because Dew could not otherwise pay for labor and materials. One of Dew’s suppliers, who is not a party here, filed a lien and a separate lawsuit against Joshua to collect a $19,000 debt owed by Dew.
Notwithstanding Joshua’s knowledge of, and response to, Dew’s financial difficulties, Joshua testified and contends that Dew remained the “contractor” until the job was completed. The record preponderates to the contrary.
Dew worked on the job until it was completed, but explained that Joshua terminated him as contractor “two or three times,” saying that he continued working as a laborer for Joshua thereafter and expected to be paid by the hour. Dew, one of the original plaintiffs in this action, claimed over $17,000 for work he performed as a laborer but listed Joshua as one of his creditors, for a greater amount, in his bankruptcy proceedings. Dew’s debts were discharged by the bankruptcy court before this action was tried. The trial court granted Joshua’s motion for involuntary dismissal of Dew’s claim under CCP Art. 1672 on findings that Dew’s right of action was vested in the bankruptcy trustee. Dew testified, but did not appeal.
Three plaintiff-laborers who were initially hired by Dew testified that Joshua verbally agreed to pay them current and past wages after telling one or more of them that he had “taken over” the job from Dew. The trial court admitted this testimony over defendants’ objection that parol evidence may not be used to prove a promise to pay the debt of a third person. The court granted judgment in favor of two plaintiffs, Graham and Northeast Pest Control. The court dismissed the claim of another original plaintiff, Jimmy James, a plumber-handyman, on findings that James did not prove his rate of pay. James did not appeal, but his testimony corroborated other plaintiffs that Joshua took the job away from Dew and promised to pay the workers current and past wages. We shall discuss this testimony in response to Joshua’s contention that parol evidence was erroneously admitted.
Plaintiff Cole, a general contractor, claimed about $6,600 for labor and materials he furnished for the project after either or both Dew and Joshua asked him to help finish the project. Cole timely perfected his lien but admitted on cross-examination that he altered the invoices from his supplier, Russell-Moore Lumber, Inc., which he filed in support of the lien, by changing the delivery location shown on the original invoices from another address to the address of the Joshua work. Cole explained that “I couldn't use [Joshua’s] address,” because Russell-Moore “had gotten the word on Alex Joshua ... That is why I didn’t *862 charge them to Joshua’s address.” He said that the materials on the Russell-Moore invoices were actually delivered by him to the Joshua property. A city employee who supervised the project testified that she once saw Cole “delivering materials” to the Joshua property. Cole’s brother, who worked for him as a carpenter on the Joshua job, testified that Cole was working another job at the same time but was not asked whether he saw Cole deliver materials to either jobsite.
The trial court found that Cole has established, albeit by a bare preponderance of the evidence, that the materials he purchased at Russell-Moore Lumber Company were in fact actually delivered to and incorporated into the job site on the ... property belonging to Joshua. This finding is based upon Mr. Cole’s own credible testimony and is corroborated in part by the testimony of Mrs. Howell [the city supervisor] and Elijah Cole [Earnest Cole’s brother]. On the other hand, this Court cannot sanction the perpetration of a misrepresentation upon the Court by the presenting of invoices which have been materially altered ...
The court granted Cole a money judgment for all of his claim for materials and a portion of his claim for labor, but denied recognition of Cole’s lien. Calling these rulings inconsistent, Joshua contends that if Cole proved the materials were delivered to the Joshua property his lien should be recognized, and if he did not prove delivery he should not recover at all. Joshua also contends the court should not have found any of Cole’s testimony credible after Cole admitted altering the Russell-Moore invoices to support his lien.
Cole did not appeal or answer the appeal to have his lien recognized, but contends the money judgment recognizing his unsecured claim should be affirmed.
CLAIMS OF GRAHAM AND NORTHEAST PEST CONTROL
Graham and Northeast Pest Control (NPC) were initially hired by Dew and are deemed Joshua’s subcontractors. Their statutory lien rights derive from LRS 9:4802, which expressly recognizes that these rights are “in addition to other contractual or legal rights the claimants may have for the payment of amounts owed them.” § 4802 D.
Graham did not file a lien. NPC’s lien was not timely filed. The failure of these claimants to perfect liens bars their recovery from the property owner unless they can prove a contract with the owner. Newt Brown, Inc. v. Michael Builders, 569 So.2d 288 (La.App. 2d Cir.1990), writ denied. Their contractual claim is founded on their testimony that Joshua verbally agreed to pay them for their work on his project when they complained to him that Dew had not paid.
Joshua objected to parol evidence to prove that he agreed to pay the plaintiff-appellees, citing CC Arts. 1821 and 1847. These articles require that an agreement to pay the debt of another be in writing. The trial court overruled the objection, noting that parol evidence is admissible to prove the promise to pay the debt of another if the promisor assumes a primary, rather than a collateral or secondary, obligation, and has a pecuniary interest or business motivation for doing so. See Seashell, Inc. v. Simon, 398 So.2d 99 (La.App. 3d Cir. 1981), following B. & B. System, Inc. v. Everett, 34 So.2d 521 (La.App. 2d Cir.1948). This court said in Everett, at p. 522:
We of course concede the law to be that parol evidence is inadmissible to prove a promise to pay a debt of a third person. However, parol evidence is competent to prove the assumption of a debt by one who is activated by a pecuniary interest of his own in making the agreement, which in effect becomes an independent undertaking and may be established by any competent evidence.
NPC treated the property for termites in October 1987, after Dew agreed to pay $800 for these services. NPC’s principal officer and owner, Otis Jackson, testified that Joshua agreed to pay him when he and *863 Joshua met and conversed at the property a month or so later.
Graham built two sets of cabinets for which he initially billed Dew $1,372 on December 11, 1987. He testified he contacted Joshua at some later date, not specified in the record, after Dew told him that Joshua “had [taken] the job over, that [Joshua] was to pay everybody. So to confirm it, I called [Joshua] at his home and he told me, yes, when he finished the project that he would pay me, that there was plenty of money left to pay everybody with.”
Jimmy James was also hired by Dew in late 1987 to do plumbing and other work on the Joshua renovation. He worked for several weeks without being paid and eventually complained to Joshua. He said Joshua responded that “he would pay me ... if we would finish the job.” Joshua said he told James and another worker, not named in the record, only that he would “let them in on the settlement” if there was any money left after he settled with Dew at the end of the job. Joshua asserted that James and the other worker agreed to continue working, knowing that they had only a chance, but not an assurance, that they would be paid.
The trial court found that Joshua’s obligations to pay Graham and NPC were primary, rather than collateral or secondary, and that Joshua had a pecuniary interest in seeing that they got paid. Citing Seashell, Inc. v. Simon, supra, the court found parol evidence admissible to prove the obligations.
Joshua does not dispute that he had a pecuniary interest in seeing that Graham and NPC were paid. He argues, however, that the trial court was clearly wrong in classifying the obligations as primary because Graham and NPC had no dealings with him until after they had finished their work and had billed Dew.
Legally, the classification of the obligation as primary or secondary is not determined solely by when it was undertaken, but by whether it was undertaken as an independent obligation to pay or as an obligation to act as guarantor or surety. The latter must be in writing; the former may be proved by any competent evidence. See and compare B. & B. System, Inc. v. Everett and Seashell, Inc. v. Simon, both cited supra.
Joshua represented to the city that he was general contractor for the project and admitted it would be “reasonable” to say Dew was his subcontractor. Joshua received all loan payments from the city. Within a week after he contracted with Dew, Joshua knew of Dew’s financial difficulties and advanced Dew money to acquire and pay for labor and materials. In the last two months of the job, Joshua paid Jimmy James $950, according to checks in evidence. He admits he paid cash to other workers initially hired by Dew. Under these circumstances, we cannot say the trial court was clearly wrong in finding that any obligation Joshua verbally undertook toward Graham and NPC was primary rather than collateral or secondary. Parol evidence was properly admitted. See and compare Jones v. Hebert & LeBlanc, Inc., 499 So.2d 1107 (La.App. 3d Cir.1986).
Under CC Art. 1846, Graham and NPC had to prove their claims, which exceed $500, by at least one witness and other corroborating circumstances. The trial court obviously believed the testimony of Graham and Jackson that Joshua agreed to pay them for work done on his duplexes. Joshua did not squarely deny this, saying only that he had no dealings with them until after they finished their work. The testimony of Joshua and of Jimmy James corroborates Graham and Jackson, whose testimony was not inconsistent or implausible on its face and was not contradicted by documents or objective evidence. Joshua was not a stranger to the work being done on his duplexes. He was frequently there. Under the standard of factual review set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989), we cannot and do not disturb the trial court’s factual finding that Joshua verbally agreed to pay for the work done on his duplexes by Graham and by NPC.
COLE’S MONEY JUDGMENT
We reach a contrary conclusion under the Rosell standard, however, regard *864 ing the finding that Cole proved he delivered over $5,000 of materials to the Joshua worksite. Cole introduced copies of ten invoices from Russell-Moore Lumber, Inc., for materials he bought in February 1988. Cole altered the invoices to show that the materials were delivered to “Alex Joshua, Jr., West Monroe, for Billy Dew.” Joshua introduced Russell-Moore’s account ledger for Cole’s account and the original invoices. According to these documents, the materials on these invoices were charged and delivered to “B. D. Robinson, 3807 Jackson St.”
Cole testified that Robinson owned two business colleges, at 800 and 1517 Jackson St., and lived at an unspecified address on Jackson St. Cole had worked at both business colleges but said this work was not done at the same time as the work for Joshua. The Russell-Moore account ledger shows a total of 22 invoices for materials charged to the Robinson job from January-March 1988. Cole’s brother, Elijah, worked for him as a carpenter and testified that he worked on the Joshua job at night because Cole was working another job during the day. Elijah was not asked whether the other job was for Robinson.
Cole explained that he altered the invoices because Russell-Moore would not allow him to buy materials on credit if he charged them to the Joshua address. He did not call anyone from Russell-Moore to corroborate his testimony. The trial court found Cole’s explanation credible, notwithstanding his impeachment by the original invoices and account ledger.
The court found that Cole’s testimony was corroborated by the city supervisor, Ms. Howell, and by Elijah Cole. Neither of these witnesses, however, identified or described any materials delivered by Cole. Ms. Howell said only that she saw Cole “delivering materials” when she inspected the property on some unspecified date. Cole’s brother’s testimony that he worked the Joshua job at night and another job during the day might allow the reasonable inference that the day job was for Robinson, but for Cole’s square assertion that he was not doing work for Robinson and Joshua at the same time.
Cole’s credibility was effectively impeached by the evidence that he altered the Russell-Moore invoices and that he charged other materials, reflected by other invoice numbers on the account ledger, to the Robinson address at a time when he denied that he was doing work for Robinson. The evidence referred to by the trial court as corroborating is contradicted in part by Cole’s own testimony and is simply too vague to qualify as the “bare preponderance of the evidence,” as the trial court said, that Cole delivered or caused to be delivered over $5,000 of materials to the Joshua property. See and compare Bernard Lumber Company v. Sayre, 230 La. 17, 87 So.2d 713 (1956).
On this record, even allowing the credibility call, the preponderance of the evidence does not show that Cole proved delivery of the Russell-Moore materials. Rosell v. ESCO, supra; Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir.1983), writ denied. We therefore amend the judgment that awards Cole the full amount of his claim, reducing it to $480, the amount awarded for the labor of Cole’s brother, which is not disputed by Joshua.
DECREE
The judgment is amended to reduce the award to Cole to $480. Cost of the appeal are assessed one-half to Joshua and one-half to Cole. As amended, the judgment is AFFIRMED.