625 So.2d 527 (1993)
MATTIX CABINET WORKS, INC.
v.
Richard B. WITT d/b/a Sun Time Pool Company.
No. 93-CA-258.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 1993.
*528 F. Joseph Drolla, Jr., Metairie, for plaintiff/appellee.
Dennis S. Mann, New Orleans, for defendant/appellant.
Before WICKER, GOTHARD and CANNELLA, JJ.
WICKER, Judge.
This appeal arises from a suit on an open account filed on behalf of plaintiff/appellee, Mattix Cabinet Works, Inc. (Mattix), against defendant/appellant, Richard B. Witt d/b/a Sun Time Pool Company (Witt), for unpaid invoices, interest, attorney's fees and costs. Witt filed a third party demand against Jean Mestriner and Piet Kessels. Kessels was dismissed. The trial judge rendered judgment in favor of Mattix and against Witt in the amount of $4,864.50 plus attorney's fees of $1,200.00, costs, and interest. He also rendered judgment in favor of Witt and against Mestriner on the third party demand. Witt is the only party to appeal the judgment. The seminal issue on appeal is whether Witt had an open account for materials from Mattix. The trial judge found Mattix liable. We reverse.
The only witnesses to testify at trial were the plaintiff, Paul Mattix, and the defendant, Richard Witt. The testimony at trial set forth the following.
Mattix testified he is the vice-president of Mattix Cabinet Works, Incorporated. During his testimony it was stipulated that the invoices introduced into evidence total $4,864.50. Mattix stated the invoices reflect materials sold to Witt.
Mattix stated he was first approached by Piet Kessels, an architect, and Mrs. Mestriner. These two individuals came to his showroom November, 1988 and selected cabinets, the value of which totaled approximately $7,000.00. He explained:
At that time they were letting the job out to two or three contractors for bids of which Mr. Witt was one of them. In order to expedite the job because they were on a quick time table they wanted to order the cabinets prior to awarding the contract to a contractor, at which time they did and they paid for the cabinets. [emphasis added].
This initial order of cabinets was received approximately eight to twelve weeks later. Mattix delivered these cabinets. He stated:
The counter tops were the next to be delivered and installed and I talked to [Witt] about it and he secured a check for me for that. I billed it to him and he paid me for it and he told me the appliances which the majority of [sic] was still owed to deliver them and within a week I would get my check for the appliances.
Mattix said he delivered the appliances as well as other miscellaneous items mentioned *529 in the invoices. Although the selections for the appliances and counter tops were made by Kessels and Mestriner it was Witt who instructed Mattix to deliver them. Mattix did not do the installation of the cabinets and appliances.
After he sent invoices to Witt he contacted him about payment. Witt told him he himself had not been paid and thus Mattix would not be paid. He stated that Witt told him he had filed a lien to protect the two of them.
On cross examination he testified that Jean Mestriner was the owner of the building in which his (Mattix') cabinets and appliances were delivered. He understood that Witt was the contractor. When Witt gave him a check in payment it could have been a check from Mr. Mestriner. Mattix did not remember. Witt did go to his showroom and instruct Mattix to order materials necessary to finish the job. This amounted to "hundreds of dollars". All of the materials he supplied went into the Mestriner's house. He admitted he had no contract with Witt. Witt never told him he (Witt) was responsible for payment but did tell him he would get paid within five days of delivery.
Mattix testified he never filed a lien against the property nor did he attempt to collect money from the owners. Mattix further testified he never entered into a written contract to supply these items. He never saw a written contract between Mestriner and Witt.
Also entered into evidence with Mattix' testimony was the certified demand letter sent to Witt.
Richard B. Witt testified as follows. He did business at the time at issue as Sun Time Pool. He was hired as a service and labor contractor to finish the interior of a condominium owned by Mr. and Mrs. Mestriner. Mr. and Mrs. Mestriner were to select the cabinets and Witt was to install them. He explained:
The contract called for me to submit bills after I had received them and had okayed them as being items that were installed or items that were acceptable. I was to submit the bills to Piet Kessels who was the architect who would then okay the bills and send them to the Mestriners, who would then okay the bills and then in turn would present them to the homestead for payment. All funds were paid by the Mestriners through the escrow account.
Introduced into evidence was an abbreviated contract between himself and the Mestriners. Article 21.1 provides in part: "The owner shall pay these invoices directly to the creditor named in the invoice." These invoices included "all materials invoices to the contractor greater than or equal to two hundred ($200.00) dollars."
Witt testified he was not in charge of signing checks for payment on this job and that he did not issue checks. The check he gave Mattix for the counter tops was not his check but a homestead, escrow check. Witt denied that his problems getting a final payment affected Mattix. He stated at that time there were still funds in escrow for the cabinets. Witt had no control over the escrow account. The only reason his name was on the invoices was merely "as an accommodation". He stated:
It was convenient for the material people and some of the sub-contractors to send their invoices to me since I needed to first present them to the architect.
Witt stated he never entered into a contract with Mattix. He denied ever telling Mattix he was responsible for payment. He did submit all of the Mattix bills for payment. He denied ever telling Mattix he filed a lien. He did not file one. He was never paid approximately $1,000.00.
On appeal Witt argues the following:
1. There was no contract between Mattix and Witt for materials on an open account;
2. The Mestriners were bound to pay all labor and material invoices;
3. Witt acted solely as an agent for the Mestriners in dealing with Mattix, and
4. Assuming there had been a promise by Witt to pay the debt of another, this promise would amount to suretyship which would be invalid if not in writing.
Mattix filed suit under the open account statute, La.R.S. 9:2781. The appellant correctly argues that an action on an open *530 account must be based on a contract between the parties. La.R.S. 9:2781. La.R.S. 9:2781(C) provides in part:
"open account" includes any account for which a part or all of the balance is past due, whether or not at the time of contracting the parties expected future transactions. [Emphasis added].
We have held that one who sues on an open account has the burden of proving the contract. Wm. B. Coleman Co., Inc. v. Ackel, 459 So.2d 596 (La.App. 5th Cir.1984).
The appellant also correctly cites La.Civ. Code art. 1846 which provides that an oral contract for an amount above $500.00 must be proven by one witness and "other corroborating circumstances". It states:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.
See also Roy R. Broussard Lumber Yard v. Wilson, 560 So.2d 93 (La.App. 3rd Cir.1990).
Mattix was the only witness to testify to the existence of a contract. Witt denied these allegations. The trial judge viewed the abbreviated contract between Witt and the Mestriners as corroborative proof. However, Mattix admitted he never saw a written contract between Mestriner and Witt.
The trial judge based him decision in part on article 10.2 of the abbreviated contract between Witt and the Mestriners. That article provides:

Unless otherwise specifically provided in the Contract Documents, the Contractor shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for the proper execution and completion of the work, whether temporary or permanent and whether or not incorporated or to be incorporated in the work. [emphasis added].
However, article 21.1 of this document does otherwise specify that the owner pay invoices for materials. Article 21.1 does otherwise specify when it states: "The owners shall pay these invoices [including all material invoices] directly to the creditor named in the invoice." Under the standard of review delineated in Rosell v. ESCO, 549 So.2d 840 (La.1989) we find manifest error in the trial judge's evidently relying on the abbreviated contract as corroborative evidence.
Although Mattix argues there was corroboration "by the fact that Witt paid an invoice" this was clearly the procedure for payment. Mattix stated he could not remember whether Witt paid him with a personal check. On the other hand Witt testified he paid Mattix with a homestead check. Furthermore, an obligation to pay the debt of another must be in writing. Cole v. Joshua, 575 So.2d 859 (La.App. 2nd Cir.1991).
Accordingly, for the reasons stated the judgment in favor of plaintiff, Mattix Cabinet Works, Inc. and against the defendant, Richard B. Witt in the amount of $4,864.50, attorney's fees of $1,200.00, costs and legal interest is reversed. Judgment is now rendered in favor of defendant, Richard B. Witt, and against plaintiff, Mattix Cabinet Works, Inc. dismissing the claims of Mattix Cabinet Works, Inc. against Richard B. Witt with prejudice. Costs of this appeal are to be borne by Mattix Cabinet Works, Inc., appellee.
REVERSED AND RENDERED.