DANIEL L. DYSART, Judge.
|!Appellants, Edward Tuck Colbert and Kenyon & Kenyon, a Washington, D.C., based law firm, appeal the grant of summary judgment in favor of Owen E. Brennan, Jr.; Theodore M. Brennan, Shawn Tiffany Brennan and Samantha Scott Brennan, succession representatives of James C. Brennan. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
For many years, the law firm of Baldwin Haspel, L.L.C., and particularly attorney Leon Rittenberg, represented Brennan’s, Inc., in matters related to the operation of Brennan’s Restaurant in New Orleans.
In 1998, a dispute arose between the Brennan brothers, Owen “Pip” E. Brennan, Jr., James “Jimmy” C. Brennan[1], and Theodore M. Brennan (hereinafter “the Brennan brothers” or the “brothers”), who owned and operated Brennan’s Restaurant, and a cousin, Richard Brennan, Jr. (Dickie), about the use of the family | ¿name in connection with a restaurant Dickie was planning to open.[2] The brothers were concerned about confusion in the marketplace and possible trademark infringement of the Brennan name. They contacted Mr. Rittenberg, who in turn referred them to Edward T. Colbert of the firm Kenyon <& Kenyon, L.L.P. (hereinafter “Kenyon *789 firm”). Mr. Rittenberg represented to the brothers that the Kenyon firm, particularly Mr. Colbert, was an expert in the field of intellectual property.
According to the Brennan brothers, they explained to Mr. Colbert that they were not interested in protracted and expensive litigation. Instead, they wanted an agreement drafted that would spell out the rights of the two parties as to the use of the name Brennan, with a minimum of confusion to the public. Such an agreement was drafted, minor changes were made by Dickie Brennan, and the agreement was finalized with the signature of Pip Brennan, the corporation’s secretary.
Further disputes arose, however, between the Brennan brothers and Dickie Brennan. In 2000, Baldwin Haspel, L.L.C. and the Kenyon firm, filed a lawsuit against Dickie Brennan in federal court. Counsel for Brennan’s, Inc., obtained a judgment of $250,000.00 in favor of Brennan’s, Inc. An appeal followed. The end result was that Brennan’s, Inc., was that Brennan’s, Inc., was entitled to a judgment of $250,000.00, but owed $2.5 million for legal fees and costs to Mr. Colbert and his firm.
UBrennan’s, Inc., obtained new counsel and filed a new lawsuit in federal court seeking to have the 1998 agreement declared null for lack of a specified duration. The court dismissed the lawsuit on the grounds of res judicata, stating that the issue was already litigated in the previous lawsuit.
In 2005, Brennan’s, Inc., filed suit for legal malpractice against Messrs. Colbert, Rittenberg, and their respective law firms. The corporation sought damages and a declaratory judgment that no further legal fees were owed to the Kenyon firm. The Kenyon firm answered the suit, and filed a reconventional demand for the unpaid legal fees and costs. In addition to naming Brennan’s, Inc., as defendants-in-reconvention, the Kenyon firm named each of the Brennan brothers individually, as shareholders of the corporation.
In late 2010 and early 2011, several summary judgment motions were filed, including:
1. A motion by Rittenberg and Baldwin Haspel, L.L.C., and a motion by Colbert and Kenyon, seeking dismissal of Brennan’s, Inc.’s legal malpractice claims, including Brennan’s, Inc.’s failure to designate an expert witness to establish a standard of care or breach of the standard of care by any defendant.
2. A motion for summary judgment by Kenyon for the suit on open account against Brennan’s, Inc. only.
3. A motion for summary judgment by Pip Brennan, seeking dismissal of Kenyon’s reconventional demand against him personally.
4. Motions for summary judgment by Ted Brennan and the representatives of Jimmy Brennan’s succession, seeking dismissal of Kenyon’s reconventional demand against them personally.
5. A cross-motion for summary judgment by Kenyon seeking to impose personal liability on Pip, Jimmy and Ted for Brennan’s, Inc.’s debts for legal services.
After hearings were conducted, the trial court ruled as follows:
141. It dismissed all remaining legal malpractice claims brought by Brennan’s, Inc.
2. It granted Kenyon’s motion for summary judgment on the suit on open account against Brennan’s, Inc.
3. It granted each of the brother’s motions for summary judgment, dismissing Kenyon’s reconventional demand against them personally.
*790 4. It denied Kenyon’s cross-motion for summary judgment seeking to impose personal liability on the Brennan brothers.
Only the last two judgments are before us on appeal. The basis for each motion is identical: Whether the Brennan brothers, shareholders of Brennan’s, Inc., can be held personally liable for the corporation’s debt.
DISCUSSION:
“Favored in Louisiana, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish Nat’l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La.Code Civ. Proc. Art. 966 A(2)). Motions for summary judgment are reviewed on appeal de novo. The same criteria that govern the trial court’s determination of whether summary judgment is appropriate are used by the reviewing court. Samaha v. Ran, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-883. . A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. Art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim-, action, or defense, but rather to point out to the court that there is an absence of | ^factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La.Code Civ. Proc. Art. 966 C(2).
In this case, the Kenyon firm had the burden of proving that the Brennan brothers, as individual shareholders of Brennan’s, Inc., should be held personally liable for the debts of Brennan’s, Inc. The brothers argued that they could not be held personally liable because they had not expressly, unequivocally and in writing promised to stand as sureties for the corporation. The Kenyon firm, in brief to this Court, has stated that its argument on this issue is flawed, and therefore concedes that summary judgment was appropriate on this issue.
However, the Kenyon firm also raised in its motion the theory that the Brennan brothers could be held personally liable for the corporate debts because of intentional misrepresentations in the petition and other evidence of criminal acts, fraud, lack of corporate formalities and loans made to the brothers in lieu of payment of corporate dividends. The Kenyon firm argues that because genuine issues of material fact exist as to all of the above allegations of wrongdoing by the brothers personally, summary judgment was inappropriate, and the Kenyon firm should be allowed to pierce the corporate veil and proceed against the Brennan brothers personally.
The determination of whether a fact is material turns on the applicable theory of recovery. Thomas v. North 40 Land Dev., Inc., 04-0610, p. 22 (La.App. 4 Cir. 1/26/05), 894 So.2d 1160, 1174. A fact is material if its existence or nonexistence is essential to plaintiffs cause of action under the applicable theory of | f,recovery. Harvey v. Francis, 00-1268, p. 5 (La.App. 4 Cir. 3/21/01), 785 So.2d 893, 897. Thus, *791 not all disputed facts are material for the purposes of summary judgment.
As a general rule, a corporation is a distinct legal entity, separate from the individuals who compose it, thus insulating the shareholders from personal liability. This rule is statutory in origin and well-supported by the jurisprudence. Riggins v. Dixie Shoring Co., 590 So.2d 1164, 1167 (La.1991).
There are limited exceptions where the court may ignore the corporate fiction and find the shareholders personally liable for the debts of a corporation. Id. at 1168. One of those exceptions is where the corporation is found to be the “alter ego” of the shareholder. It usually involves situations where fraud or deceit has been practiced by the shareholder through the corporation. Id. Another basis is where the shareholders disregard the corporate formalities to the extent that the corporation and the shareholders are no longer distinct entities. Id.; see also Haywood v. Louisiana Sugar Cane Prods., 95-1151 (La.App. 3 Cir. 3/5/97), 692 So.2d 524, 528.
Factors to be considered when determining whether to apply the alter ego doctrine include, but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to following statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings. Id.; Crutcher-Tufts Resources, Inc. v. Tufts, 2007-1556, p. 2 (La.App. 4 Cir. 9/17/08), 992 So.2d 1091, 1093.
Absent fraud, malfeasance or criminal wrongdoing, courts have been reluctant to hold a shareholder personally liable for corporate obligations. When a 17party seeks to pierce the corporate veil, the totality of the circumstances is determinative. Id.
The Kenyon firm argues that when it demanded payment of its bills, the Brennan brothers explicitly promised they would pay all bills and identified specific funds that would be used. The Kenyon firm states that it is undisputed that the promises were made by the brothers for the purpose of inducing additional legal services. To support this argument, the Kenyon firm attached portions of responses to Requests for Admissions and excerpts of depositions.
The supporting evidence submitted by the Kenyon firm does not prove that any one of the Brennan brothers agreed to personally pay the debt to the Kenyon firm. Rather, the testimony indicates that each brother was speaking on behalf of the corporation. In the Kenyon firms’ own brief, it admits that the operation of Brennan’s, Inc., was lacking in formality, with no formal meetings held, agendas prepared or minutes taken. Brennan’s, Inc., is a small, family corporation. There is no proof offered that when any of the brothers spoke, whether in conversations or in pleadings, that he was not speaking as a member of the corporation, and not on his own behalf.
The Kenyon firm was aware of the nature of the operation of Brennan’s, Inc., through the corporation’s long-time attorney, Mr. Rittenberg, prior to being retained. The client was Brennan’s, Inc., bills were sent to Brennan’s, Inc., and payments were paid with checks from the Brennan’s, Inc., bank accounts. Evidence attached to the Kenyon’s firms own motion indicate that Brennan’s, Inc., maintained its own accounting records and filed its own tax returns. In its suit on open account, the Kenyon firm acknowledged that *792 Brennan’s, Inc., acting through its shareholders, promised to make good on the debt.
IsThere is no evidence that the Brennan brothers ever agreed to bind themselves personally for any debt incurred in connection with the legal services provided by the Kenyon firm. There is no written retention agreement between the corporation and the Kenyon firm, nor is there a written guaranty from any of the brothers.
The Kenyon firm admits that there is no requirement for small, closely-held corporations to operate with the formality usually expected of larger corporation. See, e.g., McDonough Marine Serv. v. Doucet, 95-2087, p. 4 (La.App. 1 Cir. 6/28/96), 694 So.2d 305, 308. The Kenyon firm has failed to establish that the lack of corporate formalities, particularly, meetings, agendas and minutes, is sufficient to pierce the corporation veil. Brennan’s, Inc., at all times since its inception has maintained corporate books, corporate bank accounts, and has filed corporate tax returns.
The Kenyon firm also argues that the Brennan brothers committed tax fraud, thus vitiating the protection of the corporation. The Brennan brothers counter that to prove fraud, one must prove the intent to defraud.
Louisiana Civil Code art. 1953 provides:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
The Kenyon firm has not proven that any of the Brennan brothers made promises to pay the firm’s bills without the intent to pay them. As noted by counsel for Shawn and Samantha Brennan, if a broken promise to pay was sufficient to establish fraud, then every lawsuit against a corporation for a debt 19would automatically allow for the piercing of the corporate veil. Clearly, a juridical entity such as a corporation can only speak through its shareholders.
Further, the argument that the Brennan brothers committed tax fraud because they claimed deductions for payment of professional services, when in fact those payments were not made, is without merit. Any fraud, if such exists, was not perpetrated against the Kenyon firm, but rather against the Internal Revenue Service. Moreover, evidence submitted by the Kenyon firm in support of its motion for summary judgment indicates that the Brennan brothers sought the advice of counsel before claiming the deduction. Counsel (Mr. Rittenberg) explained that as long as the legal services were rendered primarily to address a breach of contract, as opposed to ownership of the Brennan’s trademark, and resulted in a loss of income, the fees should be deductible as an ordinary business expense.
After a thorough review of the record, including the evidence offered in support of the motions for summary judgment, we conclude that the trial court did not err in granting summary judgment in favor of the Brennan brothers, and in denying the summary judgment filed on behalf of the Kenyon firm.
AFFIRMED

. Jimmy died during the course of this litigation and Shawn Tiffany Brennan and Samantha Scott Brennan were substituted as dative independent co-executrixes of his estate.

. Dickie had been given the Palace Café Restaurant on Canal Street by his father, Richard Brennan, Sr., and had changed the name to "Dickie Brennan’s Palace Café,” and was planning to open "Dickie Brennan's Steakhouse,” within three blocks of Brennan's Restaurant.