Ernest A. Burguieres, ATTORNEY AT LAW, 829 Baronne Street, New Orleans, LA 70113, COUNSEL FOR PLAINTIFF/APPELLANT
Matthew K. Brown, SULLIVAN, STOLIER & RESOR, APLC, 909 Poydras Street, Suite 2600, New Orleans, LA 70112, COUNSEL FOR DEFENDANT/APPELLEE
(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Tiffany G. Chase )
Judge Joy Cossich Lobrano *50 This appeal arises from wage and rent disputes concerning a medical practice. Plaintiffs/appellants, Kent Andrew Hickey, M.D. ("Dr. Hickey"), Malcolm Sutter, III ("Mr. Sutter"), The Doc's Clinic, APMC ("Doc's Clinic"), and M.F. Leasing, Inc. ("M.F. Leasing")(collectively, "plaintiffs"), appeal the March 9, 2018 judgment of the district court, which awarded Dr. Hickey and Mr. Sutter certain past wages but denied other claims as prescribed. For the reasons that follow, we affirm the judgment of the district court.
This matter stems from two lawsuits, both filed on January 28, 2008, against John E. Angelo, M.D. and his medical practice, John E. Angelo, D.O. (A Medical Corporation).[1] The first suit was filed by Dr. Hickey and Doc's Clinic, while the second suit was filed by Mr. Sutter and M.F. Leasing. These lawsuits were later consolidated on May 25, 2017.
Dr. Hickey and Mr. Sutter were both employed by the practice, respectively, as staff physician and business manager. According to their petitions, Dr. Hickey owned and operated Doc's Clinic, and Mr. Sutter owned and operated M.F. Leasing. Dr. Hickey contends that Doc's Clinic and the practice entered into an agreement in which the practice agreed to reimburse Doc's Clinic for rent, utilities, and expenses associated with three medical clinics: the Orleans clinic, the St. Bernard clinic, and the Franklin clinic. Mr. Sutter alleges that M.F. Leasing entered into a similar agreement with the practice, concerning the same three clinics.
According to all plaintiffs, the practice experienced cash flow shortages and failed to meet its wage and rent obligations. Dr. Hickey alleges that he and Dr. Angelo entered into an agreement in which Dr. Angelo would satisfy his indebtedness to Dr. Hickey and Doc's Clinic upon the sale of a building located on Canal Street in New Orleans (the "Canal Street building"). Mr. Sutter also alleges that he and Dr. Angelo entered into an agreement in which Dr. Angelo would satisfy his indebtedness to Mr. Sutter and M.F. Leasing upon the sale of the Canal Street building. Both petitions state that General Practice Management Group, Ltd. ("GPMG") owned the Canal Street building, and Dr. Angelo solely owned and operated GPMG. The Canal Street building was sold in 2006, and plaintiffs allege that they were not paid any of the disputed past wages or rent from the proceeds of the sale. GPMG was not named a defendant in either lawsuit.
Following a bench trial on December 6, 2017, the district court took the matter under advisement. On March 9, 2018, the district court rendered judgment finding the practice liable to: (1) Dr. Hickey for $ 22,086.35 in past wages (plus applicable withholdings and deductions), $ 21,786.30 in penalty wages, reasonable attorney's fees, judicial interest, and court costs; and (2) Mr. Sutter for $ 8,000 in past wages (plus applicable withholdings and deductions), reasonable attorney's fees, judicial interest, and court costs. However, the district court found that all claims for *51 wages or rent prior to January 28, 2005 had prescribed.
This appeal followed, in which the plaintiffs set forth three assignments of error:
1. The District Judge erred in finding plaintiffs had not proved the existence of an oral contract between Dr. Angelo, Mr. Sutter, and Dr. Hickey, obliging Dr. Angelo to personally pay the amounts due to plaintiffs with the proceeds of the sale of his Canal Street building, instead finding the debts accruing prior to January 28, 2005 had prescribed.
2. The District Judge erred in failing to find Dr. Angelo personally assumed the wage claims awarded in her judgment.
3. The District Judge erred in declining to pierce the corporate veil and hold Dr. Angelo personally liable for the judgment against John E. Angelo, D.O. (A Medical Corporation).
The central issue in this appeal is whether plaintiffs met their burden to prove that Dr. Angelo entered into an oral contract in which he obligated himself, personally, to pay past wages and rent to plaintiffs. No document exists, memorializing the alleged oral contract. Plaintiffs argue that a ten-year prescriptive period applies to their breach of contract claim arising out of Dr. Angelo's personal oral promise, such that plaintiffs' pre-2005 claims have not prescribed.[2]
An oral contract with a value in excess of five hundred dollars "must be proved by at least one witness and other corroborating circumstances." La. C.C. art. 1846. "The plaintiff himself may serve as the witness to establish the existence of the oral contract." Suire v. Lafayette City-Par. Consol. Gov't , 2004-1459, p. 29 (La. 4/12/05), 907 So.2d 37, 58 (citing Gulf Container Repair Servs., Inc. v. FIC Bus. & Fin. Ctrs., Inc. , 98-1144, p. 5 (La. App. 5 Cir. 3/10/99), 735 So.2d 41, 43 ). "The 'other corroborating circumstances' need only be general in nature; independent proof of every detail of the agreement is not required." Id. (citations omitted). "But, the other corroboration must come from a source other than the plaintiff." Id. (citations omitted). A "party claiming to be owed in excess of $ 500.00 [ ] bears the burden of proving the existence of such a contract." Duvio v. Specialty Pools Co., LLC , 2015-0423, p. 10 (La. App. 4 Cir. 6/16/16), 216 So.3d 999, 1008 (citing Landix v. Blunt , 2012-1231, p. 5 (La. App. 4 Cir. 3/20/13), 112 So.3d 376, 379 ).
"The existence or non-existence of a contract is a question of fact, and the [district] court's determination of this issue will not be disturbed unless manifestly erroneous or clearly wrong." Read v. Willwoods Cmty. , 2014-1475, p. 6 (La. 3/17/15), 165 So.3d 883, 888 (citations omitted). The issue of whether the evidence presented is sufficient to corroborate the existence of an oral contract is, likewise, a question of fact, and the fact-finder's determination *52 will not be overturned unless it is manifestly erroneous or clearly wrong. Id. ; Gulf Container Repair Servs., Inc. , 98-1144, p. 6, 735 So.2d at 43.
This Court articulated the manifest error/clearly wrong standard of review in Lakewood Estates Homeowner's Ass'n, Inc. v. Markle , 2002-1864, p. 4 (La. App. 4 Cir. 4/30/03), 847 So.2d 633, 637 :
The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill , 505 So.2d 1120, 1127 (La. 1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dep't of Transp. and Dev. , 617 So.2d 880, 882 (La. 1993). Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart , 617 So.2d at 882. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart , 617 So.2d at 883.
The following evidence, introduced at trial, is pertinent to this Court's review. Mr. Sutter testified that, in 2002, when the practice's cash flow problems became apparent to Mr. Sutter, Dr. Angelo promised to pay Mr. Sutter's wages "when either the funds became available or when the Canal Street building was sold ...." According to Mr. Sutter, Dr. Angelo "made the same statement when [Mr. Sutter] realize[d] [Dr. Angelo] couldn't pay for the leases he had signed."[3] Mr. Sutter testified that Dr. Hickey also "had the arrangement ... that we all would be paid when the [Canal Street] building was sold." Mr. Sutter did not identify any other witness to Dr. Angelo's alleged promise.
Dr. Hickey testified that his understanding - that Dr. Angelo promised to personally pay back wages upon the sale of the Canal Street building - came from Mr. Sutter, who acted as a liaison between Dr. Angelo and Dr. Hickey. Dr. Hickey did not recall ever having a conversation directly with Dr. Angelo regarding this promise.
*53 Dr. Hickey did not identify any other witness to Dr. Angelo's alleged promise.
In Dr. Angelo's testimony, he denied promising Dr. Hickey or Mr. Sutter that he would personally pay past wages or other amounts owed by the practice. Dr. Angelo testified that GPMG owned the Canal Street building until it was sold in 2006.[4]
Gwendolyn Alexander, a 20-year employee of the practice, testified that she was not paid for the two months she worked after Hurricane Katrina, and that on several occasions Dr. Angelo promised her that she would be paid after the sale of the Canal Street building. Ms. Alexander had no knowledge whether Dr. Angelo made a similar promise to Mr. Sutter or Dr. Hickey.
Cassandra Crowley, a medical assistant for the practice, testified that she was not paid for her work in August 2005, and that she did not try to contact Dr. Angelo to get paid because "we couldn't get in contact with people after the storm [Hurricane Katrina]."
Anthony Jones, a regulatory and technical advisor for the practice's laboratory, testified that Dr. Angelo never promised to pay him any money from the sale proceeds of the Canal Street building. He was not aware of Dr. Angelo promising to pay anyone out of the proceeds of the Canal Street building sale. Mr. Jones testified that, while he worked for the practice, he was sometimes not paid his full wages due to "budgetary reasons" and that the practice owes him between $ 15,000.00 and $ 20,000.00. Dr. Angelo has not agreed to pay him these past wages. Mr. Jones voluntarily resigned from the practice in 2003 to accept a job with a new employer. At the time he resigned, the practice had not paid Mr. Jones' wages in 6 or 7 months. Mr. Jones testified that he sent numerous invoices for his unpaid wages, but he has not otherwise sought to collect them.
Plaintiffs contend that a reasonable fact-finder could not find that Mr. Sutter and Dr. Hickey worked for years without receiving their full wages or rental income, without any assurance from Dr. Angelo that the payments would be forthcoming. The Louisiana Civil Code is explicit, however, that an oral contract must be proven by at least one witness and other corroborating circumstances. La. C.C. art. 1846. As previously noted, whether the evidence at trial was sufficient to corroborate the existence of an oral contract is a determination for the trier of fact, which must not be overturned unless it is manifestly erroneous or clearly wrong. Read , 2014-1475, p. 6, 165 So.3d at 888 ; Gulf Container Repair Servs., Inc. , 98-1144, p. 6, 735 So.2d at 43.
The record on appeal contains no documentary evidence of the alleged oral contract between Dr. Angelo, Dr. Hickey, and Mr. Sutter. At trial, Mr. Sutter was the only witness to testify to personal knowledge of an oral contract. Dr. Hickey admitted that the entirety of his understanding regarding such agreement came from Mr. Sutter. Dr. Angelo denied making the promise at issue. While Ms. Alexander testified that she was promised back wages upon the sale of the Canal Street building, she had no knowledge of an oral contract between Dr. Angelo, Dr. Hickey, and Mr. Sutter. On these facts, we find no manifest error in the district court's determination that plaintiffs' evidence was insufficient to corroborate the existence of an oral contract that would bring this claim within the ambit of a ten-year prescriptive period. Plaintiffs' arguments are without merit.
*54 Plaintiffs raise a separate assignment of error that the district court erred by failing to find that Dr. Angelo personally assumed the debts of the practice. La. C.C. art. 1823 provides that an "obligee and a third person may agree on an assumption by the latter of an obligation owed by another to the former." Under La. C.C. art. 1823, "[t]hat agreement must be made in writing." Comment (b) to La. C.C. art. 1823 recognizes that an exception to the writing requirement may apply "when the promisor has a material interest in making the promise and receives consideration for it." Cf. La. C.C. art. 1847 (prohibiting using parol evidence to prove a promise to pay the debt of a third person). "If the agreement to pay is not made primarily to answer for another, but is impelled from the pecuniary or business motives of the promisor, then the promise to pay is, in effect, a new and independent agreement and parol evidence is admissible to establish the existence of the agreement." Manufacturas Industriales Del Caribe, S. de R.L. de C.V. v. Kathryn Arnett Studio, L.L.C. , 2005-1174, p. 4 (La. App. 4 Cir. 5/10/06), 931 So.2d 1126, 1128 (citations omitted)(recognizing jurisprudential exception to parol evidence rule in "instances wherein the oral promise to pay is prompted by a pecuniary or business motivation on the part of the promisor").
We find nothing in the record to indicate the district court excluded any evidence or testimony based on the parol evidence rule. Plaintiffs nonetheless contend that Dr. Angelo had a pecuniary interest in promising to pay his workers these disputed amounts to induce them to continue working for him. Whether Dr. Angelo personally assumed the debts of the practice presents a question of fact, subject to the manifest error/clearly wrong standard of review. See Boes Iron Works, Inc. v. Gee Cee Grp., Inc. , 2016-0207, p. 14 (La. App. 4 Cir. 11/16/16), 206 So.3d 938, 950.
Plaintiffs cite to Cole v. Joshua , 575 So.2d 859 (La. App. 2d Cir. 1991) for the proposition that an oral promise to pay back wages owed by a third party, not corroborated in writing, may be proven by at least one witness and other corroborating circumstances. The Cole court, nevertheless, recognized that the manifest error/clearly wrong standard applied to its appellate review, and the testimony in the Cole court's record was not expressly contradicted by other testimony or documents. Id. Cole further acknowledged that, pursuant to La. C.C. art. 1846, other corroborating circumstances are required to prove an oral contract with a value exceeding $ 500.00. Id.
Here, the district court, sitting as the trier of fact, heard and considered the testimony of Drs. Angelo and Hickey and Mr. Sutter, weighed that testimony, and evaluated these witnesses' credibility. Even if this Court would feel that its own "evaluations and interests are more reasonable than the [district court's]," on our review we must not disturb "reasonable inferences of fact ... where conflict exists in the testimony." Lakewood Estates Homeowner's Ass'n, Inc. , 2002-1864, p. 4, 847 So.2d at 637. On the facts of record, we cannot say that the district court's determination was clearly wrong, and we find no merit in this assignment of error.
Finally, we address plaintiffs' argument that the district court should have pierced the corporate veil to find Dr. Angelo personally liable for plaintiffs' claims.[5] Plaintiffs contend that the practice *55 was merely Dr. Angelo's alter ego. In Collins v. State Farm Ins. Co. , 2014-0419, p. 16 (La. App. 4 Cir. 2/4/15), 160 So.3d 987, 997, this Court explained:
[A] corporation is a legal entity separate and distinct from the members who compose it. Landry v. St. Charles Inn, Inc. , 446 So.2d 1246, 1251 (La. App. 4th Cir. 1984) (citing La. C.C. art. 435 and Buckeye Cotton Oil Co. v. Amrhein , 168 La. 139, 121 So. 602 (1929) ). "Only exceptional circumstances warrant the radical remedy of 'piercing the corporate veil.' " Landry , 446 So.2d at 1251. The purpose of allowing plaintiffs to pierce the corporate veil is to hold individual shareholders liable for wrongdoing. Scott v. Am. Tobacco Co., Inc. , 04-2095, p. 8 (La. App. 4 Cir. 2/7/07), 949 So.2d 1266, 1274. This court has allowed piercing of the corporate veil in situations where fraud or deceit has been practiced by a shareholder acting through the corporation. Id. (citing Riggins v. Dixie Shoring Co. , 590 So.2d 1164, 1168 (La. 1991) ). This court also has allowed piercing of the corporate veil when shareholders have disregarded the requisite corporate formalities to the extent that the shareholders are no longer distinct from the corporate entity-also known as the "alter ego" doctrine. Id. at 04-2095 at p. 8, 949 So.2d at 1274-75 (citing Gordon v. Baton Rouge Stores Co. , 168 La. 248, 121 So. 759 (1929) ).
The mere fact that a corporation has a sole shareholder is, without more, "insufficient ... to establish a basis for disregarding the corporate entity." See Prasad v. Bullard , 2010-291, p. 8 (La. App. 5 Cir. 10/12/10), 51 So.3d 35, 41. "Absent fraud, malfeasance or criminal wrongdoing, courts have been reluctant to hold a shareholder personally liable for corporate obligations." Brennan's Inc. v. Colbert , 2011-1095, p. 6 (La. App. 4 Cir. 2/29/12), 85 So.3d 787, 791. "When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative." Id. , 2011-1095, pp. 6-7, 85 So.3d at 791.
A district court's finding that a corporation is the alter ego of its shareholders, such that the corporate form must be disregarded and its shareholder assigned individual liability, is a finding of *56 fact subject to the manifest error/clearly wrong standard of review. Prasad , 2010-291, p. 8, 51 So.3d at 4; Jeansonne v. Schmolke , 2009-1467, p. 23 (La. App. 4 Cir. 5/19/10), 40 So.3d 347, 364.
The Louisiana Supreme Court has set forth non-exclusive "factors courts consider when determining whether to apply the alter ego doctrine" including: (1) "commingling of corporate and shareholder funds"; (2) "failure to follow statutory formalities for incorporating and transacting corporate affairs"; (3) "undercapitalization"; (4) "failure to provide separate bank accounts and bookkeeping records"; and (5) "failure to hold regular shareholder and director meetings." Riggins v. Dixie Shoring Co. , 590 So.2d 1164, 1168 (La. 1991).
The record before us contains no allegation or evidence of fraud by Dr. Angelo or the practice. As to whether the practice is the alter ego of Dr. Angelo, we do not find the Riggins factors support such a claim. For the first factor, there is no evidence in the record that Dr. Angelo commingled personal funds with the practice's funds. Considering the second factor, Dr. Angelo testified that he filed articles of incorporation with the Secretary of State for both the practice and GPMG and that both corporations remain in good standing. The record evidence otherwise provides us no guidance from which to determine whether the practice followed statutory formalities for incorporating and transacting corporate affairs. Turning to the third factor, the record contains no specific evidence supporting undercapitalization, though it is undisputed that the practice experienced cash flow shortages.
As to the fourth factor, failure to maintain separate bank accounts and bookkeeping records, there is conflicting testimony whether separate bank accounts were kept. Mr. Sutter testified that he had "never seen" a separate bank account for GPMG. Dr. Angelo testified, however, that the practice and GPMG each had separate bank accounts. There is no dispute that the practice had a bank account, from which the practice's employees were paid wages. Mr. Sutter claimed that he used the practice's funds to pay GPMG's bills. Dr. Angelo testified that the practice paid rent to GPMG, and he did not recall whether Mr. Sutter was using GPMG funds to pay rent to Doc's Clinic. According to Dr. Angelo, GPMG paid its mortgage out of the GPMG bank account, and the practice's payroll and operating expenses were paid from the practice's bank account. As to the fifth factor, the record does not elucidate whether shareholder and director meetings were held.
Considering a totality of circumstances, we cannot say that the district court was clearly wrong in finding no exceptional circumstance warranting piercing the corporate veil.[6] The record lacks any evidence of fraud. Further, the record does not support that Dr. Angelo has entirely ignored corporate formalities to such an extent as to require piercing the corporate *57 veil. We, therefore, find this assignment without merit.
Accordingly, for the reasons set forth in this opinion, we affirm the judgment of the district court.
AFFIRMED

In this opinion, we refer to John E. Angelo, M.D. individually as "Dr. Angelo," and we refer to John E. Angelo, D.O. (A Medical Corporation) as the "practice." We find no dispute in the record that the practice is solely owned and operated by Dr. Angelo.

La. C.C. art. 3499 provides that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." The reasons for judgment reflect that the district court concluded that a three-year prescriptive period applies to claims for past wages and rent, pursuant to La. C.C. art. 3494, which provides in relevant part:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board;
(2) An action for arrearages of rent and annuities; ....

The plaintiffs introduced two leases, one pertaining to the St. Bernard clinic and one pertaining to the Orleans clinic, in which Dr. Hickey leased "equipment" to GPMG, and GPMG assumed responsibility to pay utilities for the clinic building. Both equipment leases were for a twelve-month term starting on March 1, 2002 and "ending on February 28, 2002." Presumably, the parties intended for the lease to terminate on February 28, 2003. For the same time period, the plaintiffs also introduced two leases, one pertaining to the St. Bernard clinic and one pertaining to the Orleans clinic, in which M.F. Leasing leased the clinic building to GPMG, and GPMG assumed responsibility to pay rent and utilities for the clinic building. Dr. Angelo signed all four of these leases in his capacity as "president" of GPMG. Dr. Hickey testified that there was no written lease regarding the Franklin clinic, only a verbal "gentlemen's agreement" extending the terms of the other leases to the Franklin clinic. To Dr. Hickey's understanding, the verbal lease for the Franklin clinic was between GPMG and M.F. Leasing.

Mr. Sutter also testified that GPMG owned the Canal Street building.

Dr. Angelo and the practice point out that the plaintiffs failed to plead this issue in the district court. While this is true, Dr. Angelo and the practice filed pre-trial and post-trial memoranda explicitly arguing that the plaintiffs failed to meet their burden to prove a veil piercing claim. Moreover, when Mr. Sutter testified that he used the practice's funds to pay GPMG's bills, Dr. Angelo and the practice did not object or otherwise argue that they were prejudiced by the injection of this issue not previously pled. The district court in its reasons for judgment, thus, addressed Dr. Angelo's and the practice's defenses relative to this issue, finding that the plaintiffs failed to meet their burden to prove a veil piercing claim.
Under La. C.C.P. art. 1154 :
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
While this Court does not generally review issues not brought before or considered by the district court at trial, it is apparent from the record that the district court deemed the pleadings enlarged to include this issue and tried this claim without objection from the parties. We, thus, find plaintiffs' corporate veil piercing arguments properly before this Court on appeal.

Plaintiffs do not specifically claim which Riggins factors support their claim to pierce the corporate veil. They cite to Fausse Riviere, L.L.C. v. Snyder , 2016-0633 (La. App. 1 Cir. 2/15/17), 211 So.3d 1188, wherein the district court found that the shareholder had used his personal funds to pay corporate debt and used assets of three corporate entities interchangeably to satisfy debts owed by the other entities, and the appellate court upheld the lower court's decision to pierce the corporate veil. We do not find Fausse persuasive, as that case does not reflect that the district court was required to resolve conflicting testimony; rather, the appellate court reviewed under the manifest error standard the district court's finding that the entities were the alter ego of the shareholder, found a reasonable basis for that finding in the record, and upheld the district court. Moreover, no evidence was introduced here that Dr. Angelo comingled personal and corporate funds.